Mr. Wright, are you with us? I am indeed. Good morning. Good morning. Mr. Goodman, are you still with us? Yes. Good morning, everyone. Case number 20-1355 from the District of Minnesota, John Penrod et al. v. K&N Engineering. Okay. Good morning, counsel, and Mr. Wright, you may proceed. Thank you, Your Honor, and may it please the court, my name is David Wright. I represent plaintiffs John Penrod, Gus Erpenbach, and Juan Welch in this matter. Plaintiff Penrod hails from Minnesota, Plaintiff Erpenbach from Missouri, and Plaintiff Welch from Oregon. This case is about whether the district court had jurisdiction under the Class Action Fairness Act to consider this class action case. I confess as a plaintiff's attorney focusing the last 20 years or so of my career on product liability and consumer protection law, this is a fairly unique position for me to be defending CAFA jurisdiction in a case such as this. After all, CAFA was enacted with the purpose of enhancing and expanding class actions in federal jurisdiction. Congress broadened the jurisdiction by establishing lenient requirements in order to protect defendants from, quote, inequitable state treatment and to put an end to certain abusive state practices by plaintiff's counsel. But CAFA is the law, and we are here because defendant K&N Engineering has turned CAFA jurisdiction on its head by first using CAFA to remove a prior action alleging identical theories of liability involving the same three oil filters at issue here, asserting to the federal court in that case in California that CAFA's jurisdictional requirements were satisfied. And in fact, stated to that court, given the, and I'm quoting, given the potentially large class and the types of compensatory and equitable relief sought by plaintiff O'Neill in that case and proposed class members, the amount of controversy clearly meets the $5 million jurisdictional minimum. Therefore, K&N has met its burden of showing a reasonable probability that the amount of controversy satisfies federal jurisdiction. That was in removing a case from a state court in defendant's principal place of business county in California. But worse than defendant now coming to this court and attempting to have the jurisdiction over this case divested from the court, taking the contrary position, is the analysis the defendant asked the court to employ in order to do so. That is an analysis that is squarely inconsistent with the law of this circuit as established in Raskis v. Johnson. Below, by failing to heed this court's guidance in Raskis, K&N and the district court managed to make this case about Article III standing and other issues that simply do not apply here and certainly do not apply at a 12 v. 1 challenge to jurisdiction. It was in that confusion of the relevant issues that the district court reached its wrong conclusion. But to understand how the court went wrong, it is useful to look at how it got there. In ruling on defendant's first challenge to CAFID jurisdiction in a motion to dismiss brought against the original complaint filed in the action, although the district court did acknowledge that K&N had previously removed a similar class action, the court nevertheless identified several pleading deficiencies that prevented the court from being satisfied that CAFID jurisdictional requirements could be met. Those were namely that the proposed class definition was not limited to a particular time so that the court could not extrapolate how many filters might be at issue. That the complaint did not estimate or identify the cost of each filter. That the complaint did not provide a sense of the frequency of the types of damages. That the complaint did not provide a sense of the number of oil filters sold in Oregon for purposes of calculating statutory damages. And the complaint provided no information about the number of the affected KN-138 and KN-303 filters, which are alleged to be defective, as is the KN-204, but for which defendant K&N did not issue a recall. Following that order, plaintiffs filed a first amended complaint pleading specific factual allegations rooted primarily in either information submitted to the court by defendant's chief financial officer, or information that was available on defendant K&N's website regarding the filters at issue. In paragraphs 73 through 99 of the first amended complaint devoted to CAFID jurisdictional issues, plaintiff alleged that the KN-138 and KN-303 oil filters suffer from the same acknowledged defect as the KN-204. Plaintiffs allege that all filters have been sold from 2014 to the present, all three model filters have been. Plaintiffs specifically allege the defendant sold 220,000 KN-204 oil filters annually during that period at a retail price of $15.99. That was information provided in a submission to the court in the form of a declaration by defendant's CFO. In the first amended complaint and in its briefing to the district court, this information was able to be used to establish what the value of the filters at issue in this case were. So if we have 220,000 annual sales in the KN-204, there were two possible time periods to extrapolate those over. One would be from 2014 until the recall was issued in 2017, in the third quarter or fourth quarter of 2017. So we can do simple math of multiplying the annual sales of filters in the United States by either 3.75 years or five years at the time of the briefing, depending on whether one were to construe that the defect had actually been cured by defendant's recall. Would you address why O'Neill doesn't control here, and why we shouldn't be looking at whether particular plaintiffs have manifested defects in their filters? Yes, Your Honor. It seems to me we have two lines of cases out there, and I'm struggling to figure out which one applies here. There are two lines of cases out there to be but this is not the case that requires resolution of that. Because one can't, in assessing which line of case or whether either of those lines of cases control, one can't ignore the fact that we are here at a 12B1 challenge to federal jurisdiction, challenge to CAFA jurisdiction. O'Neill is a case that dealt with Article III standing of the named plaintiffs. That is not issue, and defendant won't claim that that is an issue here. The three named plaintiffs in this action, Walsh, Gripenhoff, and Penrod, all experienced a failure of these oil filters, a catastrophic failure in the sense that the oil filter came apart, oil spewed out onto the tire and the roadway while the motorcycle was in operation. Thankfully, all three were able to about something more catastrophic happening. But they clearly suffered damage from the defect alleged and have a claim that's judicially redressable. So there is no dispute here that the named plaintiffs have Article III standing. That's why O'Neill, that's why Wallace, that's why Briel don't apply here. And one does not have to get into the inquiry of are those cases still a correct description of the law or not, because they simply don't apply. Our plaintiffs do have Article III standing. Now, the district court definitely made this case about Article III standing with regard to absent class members, but that was not the appropriate analysis for this case as this court has clearly indicated in Raskis. So one need not reach whether those are still good law or should be good law. I'll be happy to address that in my final section, but in answering your question directly, that is why those cases do not apply in this case in any manner. The total value of the filters at issue range from $21 to $39 million. And that's not something that can be refuted at this stage. Plaintiffs have clearly alleged that all three filters suffer from the same defect. And at this stage, of course, all the allegations and the complaint have to be afforded deference. They can't be challenged factually. And in fact, the district court went out of its way to make clear that it was dealing with this issue as a facial challenge to CAFA jurisdiction, not as a factual challenge to CAFA jurisdiction. So the only question before this court is whether there's a legal possibility that K&N will be liable for $5 million in damages. If there's any possibility of doing so at all, then the district court's decision must be reversed. That's why this is a far simpler case than the district court or K&N make it out to be. In the proper analysis, the first step I've already alluded to, do the clearly, yes, the named plaintiffs have Article 3 standing. Each of the plaintiffs not only alleges a defect, they allege it manifested in their cases and caused damages. The only question after that is whether there is some way to calculate, given the named plaintiff's allegations, that the class could yield $5 million in damages. And the merest possibility will do, as unlikely as it may be, as long as calculation can be made without resort to guesswork. In ruling on the motion below, the court found... Counsel, a question. Yes. You mentioned that the plaintiffs, the named plaintiffs, the defect manifested itself. How important is that? I thought that the, kind of at the base of this claim was the allegation that, yes, these oil filters are defective, or were defective, and some of them failed. But the real allegation is that people wouldn't have purchased the filters if they had known they were defective, regardless of whether the defect ever manifested itself with respect to a particular purchaser. Am I wrong on that? No, you're absolutely correct on that, Your Honor, and thank you for asking that question, because this case, although the district court repeatedly characterized it as a product liability case, I guess, along the lines of some of the cases alluded to here, this is a product liability case, but it's a consumer fraud case. This is a consumer protection case. K&N marketed these oil filters as being particularly well-suited to high-performance, high-stress conditions. Plaintiffs have alleged that every single oil filter of the three models that were sold during this time period was defective. Not that it was potentially defective, that it was defective. It's not necessary that an oil filter fail and spew oil over the tire in the roadway in order to be defective. If it has a design or manufacturing characteristic that renders it capable of doing so, certainly in alarming numbers, that defect applies to every oil filter. At every point of purchase, when a customer paid $15.99 for that oil filter, they were doing so receiving a product that was not as it was marketed to be. Every putative class member here is alleged to have suffered damage at that point of purchase because they were paying more for that filter than they would have paid for it had they known that it was susceptible to the failure mode. It's not even at issue given that defendant issued a recall for the K&N 204 identifying the defect. Now, we don't believe they went far enough. Plaintiffs allege that they did not include all the filters that should have been, nor for the time period that they should have been. But the issue of whether this defect exists is not even at issue. And for that reason, in referring to the two lines of cases, this is clearly a case that is controlled by George if one were to get to the Article 3 standing. It is also a case that is controlled by this court's decision that came out shortly after the opening briefing in this appeal in Vote B State Farm, which I believe, Judge Kobus and Judge Sheppard, you were on that panel, talking about whether unnamed class members or whether putative class members are agents entitled to damage or can establish damage is a merits question. It is not a standing question. Here, the district court, in attempting to dismiss or in fact dismissing this case on a challenge to capital jurisdiction, conflated these two analysis and brought it forward. It brought it not only forward from the merit stage, not only forward from the classification stage, all the way to the 12B1 stage on an issue that this court has held is a merits issue, not a standing issue. So, again, George would control O'Neill, Wallace, and Breal do not, because this is not an Article 3 standing case with regard to the named plaintiffs. I see my time has gone to zero. I have reserved four minutes for rebuttal, and unless your honors have questions, I'll yield. Well, you... Was that my whole 15? That was your... And I ran right through the... It's your responsibility to watch the clock and preserve your own time, but... Okay. Well, I... All right. Let's go forward with Mr. Goodman. You may proceed. Thank you. Thank you, your honor. Good morning. My name is Mark Goodman. I represent K&N Engineering, and obviously we're here to defend the district court's decision, which we believe was correct, and we believe it was correct because it follows Minnesota and Eighth Circuit law, and to Justice Kobus's question about the two, what kind of case does this follow, this is a case like O'Neill. It's very important, and I think the district court correctly focused on the issue of what products were at issue here. What kind of product is this? This is not a fixture in a house or a product that is like a pharmaceutical product that has defect in it that immediately causes harm upon ingestion, and therefore doesn't work as warranted under every circumstance. This is a product that contained a defect, but was not necessarily defective. And to Justice Shepard's point, this is a product that if the purchaser bought it and it didn't fail, it worked as warranted. It's an oil, a motorcycle oil filter that's supposed to work for six months or 5,000 miles, and if the consumer purchases it and uses it and it didn't fail, which happened according to the evidence, 99.9% of the time it worked as warranted, there was no claim. And if there's no claim, there's no standing. And the issue here, and what the district court properly focused on, is it's not just the fact that three plaintiffs, the three named plaintiffs here, incurred a loss and therefore have standing to bring a claim. Your CAFA, which requires at least 100 plaintiffs with claims and at least $5 million in damages, you need to have, those plaintiffs need to have standing as well. And that's what's missing here, and that's what the district court properly focused on. There was no standing other shown by the pleadings or any of the facts presented to the district court that anyone other than- I thought I heard an allegation that there'd been recalls on these filters. You said that these filters were okay and they hardly ever failed, but there were recalls, were they not? Your Honor, there was a recall in the 204 filter out of an abundance of caution. The K&N wanted to recall it because early on in the process, there were more failures than they were used to seeing. But at the end of the day, it turned out that 0.1% of the filters failed, 0.1% of all the filters. Don't you think it's a plausible allegation that a purchaser would choose not to replace an oil filter if they had knowledge that they were subject, at least subject to failure in some circumstances? And as you've mentioned, we're also going to be subject to recall. Don't you think that would be, if we're talking about benefit of the bargain rather than products liability, but benefit of the bargain, which is what I understood counsel to say, that at least that would support the CAPA jurisdiction? What's wrong with that position? Sure, Your Honor. And that was presented to the district court. And the problem with that position is that the plaintiffs haven't really alleged a benefit of the bargain claim. It's a product liability claim. They make claims under three different state statutes, which don't apply to the nationwide class. So the numbers that counsel is throwing around are nationwide, indeed, worldwide sales numbers. The benefit of the bargain argument that they are trying to make now can only be made under the three state statute claims, Oregon, Minnesota, and California. And even in those claims, Your Honor, the benefit of the bargain claim doesn't work in a product liability situation where you have a product that performs as warranted. There are no facts alleged in plaintiff's complaint that these or that perform similarly. So you can't use a benefit of the bargain analysis to get to $5 million. If you use plaintiff's numbers and you look at three states with the sales and you divide the sales by three fiftieths, you don't get to $5 million. It's $1.7 million, even if you look at the total cost of the filters. But again, that allegation is not in their complaint that they get to $5 million based on a purchase of the products in those states. And Your Honor, they don't get to that CAFA jurisdiction threshold by benefit of the bargain where you have a product like this. And again, I think it's really important where the facts that the court considered and the court can consider facts on whether jurisdiction applies. And those facts are that these products performed as warranted 99.9 percent of the time. And there's no allegation that other products sold in this market for the same or similar price performed better than that. So whether something was prone to failure, as they allege in their line of cases where something could fail, if it doesn't fail, you don't have standing to bring the claim in a product's liability claim. And we would submit, Your Honor, there's no real basis with respect to a benefit of the bargain claim. What about the George case? How do you distinguish that from these facts? I'm sorry, Your Honor. The George case, I think we, can you remind me? That had to do with tubing, I think, that was installed into buildings. Right. Thank you, Your Honor. Yes. So the George case, like the Zurn tax case, dealt with fixtures in a building. So that's something that is a permanent fixture in a building that diminishes the value of the building because eventually it's going to fail. Here, you've got a product that you use for a certain amount of time and then you replace it and you buy another one and you put it on. If you have a consumer who buys the oil filter, puts it on their motorcycle, drives their motorcycle for 5,000 miles or six months, and the product doesn't fail, the consumer takes the oil filter off the motorcycle, disposes of it, and buys a new one and replaces it. That consumer can't say, oh, the one that I bought, used for six months, and threw away, I have a claim on that because I wouldn't have paid as much. It worked exactly as it was supposed to. The George case is different because the tubing, piping in the building, stays there and is eventually going to have to be replaced because it's going to fail or it's going to be something that diminishes the value of what it's placed into. These filters don't work that way. In Zurn, the opinion clearly states that there was inevitable failure and that that resulted in a diminution of value and that therefore it was actionable. But I'm looking at George and I don't see the same kind of finding that inevitable failure was there. Now, there's a citation. Maybe it's implied, it's a per curiam opinion, which always leads us to ask some questions about what does it really mean for us. I guess what I'm saying is that it's published though, so it's binding, but I'm not sure if Zurn and George are really exactly alike. I agree, your honor, that they're not exactly alike, but I believe that they are certainly more analogous to each other than George is analogous to O'Neill or to this case. Does it need to be sort of prone to inevitable failure in order for us to consider the fact that it's a per curiam? I think it does, your honor. Or at least it has to be a fixture that will have to be... I think those things sort of equate in my mind that if something is a fixture and it has a defect in it, then you've got something that when you sell your house, you have to disclose, well, I've got piping from this particular company that had a recall. It hasn't failed on me yet, so no problems, but the buyer might say, well, I'm not going to pay as much because you got that type of piping. Reminds me, I had a 1972 Pinto. It was my very first car. It had an unmodified gas tank. That caused me to not be able to sell that car for as much as if the gas tank had been modified because it was a fixture in the car. If I had an oil filter and then put a new one on that was not the recall oil filter, that doesn't diminish the value of my 1972 Pinto. Let me ask you, what if you had a tire manufacturer who was making passenger tires and you had a situation along these lines and a discovery was made that a particular model of tire had a higher rate of failure on the highway than was acceptable or compared to other manufacturers, would the same rule apply there? In other words, as long as your tire didn't blow up on the freeway, you couldn't join a class along the lines of this case. Does the same rule apply there? I think, Justice Kovacs, I think the facts you just gave are a little bit different than our facts that the rate of failure in these 99.9% is higher than others. But you do have that it was from one manufacturer that you were selling was higher than filters being from other manufacturers. Wasn't that the basis of the recall? Well, the basis of the recall is that we had an increase in failures at a certain point in time that were higher than we had seen before. But then over time, that evened out, turned out to be only a 0.1% failure. But to your point, I think it depends. It depends on what the failure rate is on those tires. If it's a tire recall because there's a defect that could cause a failure in the tires, but the tires don't fail, I think if the consumer, I don't think you would have a class action for, you know, you would have standing if you were a consumer who used the tire and then disposed of the tire and changed tires and nothing ever happened. I don't think you could say, well, I would have bought, I would have paid another amount of money for those tires. If you still have the tires on your car and you want to have those tires on your car, you could choose to return them or you could use them. If you use them and they work as warranted, I would submit you do not have standing to bring a claim at that point. You wouldn't be a plaintiff in a class action lawsuit. That's the whole point of CAFA and why you need to have standing. The idea behind class actions is that you have people who are actually injured and the amount of the injury is difficult to do on a case by case basis. It's much more efficient to do it on a group class basis. Here you've got very different injuries by these three plaintiffs with different filters. They bought one kind of filter. They're trying to count another kind of filter, which were two other kinds of filters, which were made by different manufacturers with different materials and different failures. And those weren't recalled. So that just shows that some products do fail just as a matter of course, and if that's just going to happen with every product. And so here you've got a situation where you've got three plaintiffs with very disparate injuries who are trying to say, well, we should be able to bring a class when there's no allegations that any other class members incurred injury and were not compensated for it. And so I see my time has run out, but again, that's their allegation and the district court correctly decided that that wasn't enough to show standing and they had two chances to show it and they failed both times. And so we believe the district court's decision is correct and should be upheld because it's consistent with the law and the circuit. Thank you very much. We appreciate your patience. Thank you, Mr. Goodman. Mr. Wright, Mr. Goodman ran over just a bit. So if there's something that you just have to say, say it in one minute and we'll be happy to listen. Go ahead. I will say it in one minute. Thank you so much, Your Honor. Your Honor, Raskis controls this case and it's important in this respect. In Raskis, the defendants who were the proponents of CAPA jurisdiction did not come up with a complication of damages. Raskis, Spivey, and Lewis all stand for the proposition that what we're looking at is what is total at stake. It doesn't require computation of damages. It doesn't require a finding of a class certification at the challenge to the pleading stage. What's at stake? In all those cases, the total number of charges, the total number of sales, the total number were what was tied to CAPA jurisdiction, not what are the you don't get to this issue that they want to put at issue. And the final thing in my eight seconds is in response to the entire example. If you carry what defendant wants to do to its full extent, then you could have a manufacturer who produces a product that fails 80% of the time, and it could fail catastrophically 80% of the time. The 20% of people who use it for its life and it doesn't fail, you're saying they have no damage in consumer protection, no damage at all because they may have paid a premium over competitors' products or complete misrepresentations regarding the product, it would deny them. It would deny them to have those claims heard. And that's why conducting this analysis at the 12B1 stage is unprecedented. There is no case cited by defendant in which the analysis they're asking this court to apply was applied at the 12B1 stage, not in any of those cases. All right. Thank you very much, counsel. The case is submitted, and we'll render a decision in due course. You may stand aside.